488 A.2d 303

## L & J EQUIPMENT COMPANY, INC.

v.

## UNITED MINE WORKERS OF AMERICA, United Mine Workers District Four, and United Mine Workers District Five.

**Appeal of UNITED MINE WORKERS OF AMERICA, United Mine Workers District Four, and United Mine Workers District Five, Thomas Edward Samek and Marshall Morris.**

Superior Court of Pennsylvania.

Argued Aug. 2, 1984.

Filed Feb. 1, 1985.

52

James T. Davis, Uniontown, for appellants.

William M. Radcliffe, Uniontown, for appellee.

Before ROWLEY, DEL SOLE and MONTGOMERY, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

The United Mine Workers of America, United Mine Workers Districts Four and Five (Union), Thomas Edward Samek and Marshall Morris, appeal from the Order of May 14, 1984, adjudging them in contempt of court for violating the court's previous orders of July 29, 1983 and October 14, 1983, enjoining the use or threat of force on picket lines and the prevention of ingress to and egress from the worksite of L & J Equipment Company (L & J). Pursuant to the contempt adjudication, Marshall Morris received a suspended sentence, Thomas Samek was sentenced to not less than one month or more than six months in the Greene County

jail, and the Union was fined $2,500.00. Appellants argue that the contempt proceedings were in the nature of indirect criminal contempt and, thus, they were entitled to the right to be notified of the accusations against them and the right to demand a jury trial in accordance with 42 Pa.Cons.Stat. § 4136(a). Appellants further claim that the penalties imposed upon them exceeded the statutory maximums set forth in 42 Pa.Cons.Stat. § 4136(b). We agree, and therefore, we reverse the order and vacate the sentences imposed.

These proceedings were commenced by a complaint in equity filed by L & J against the Union on July 26, 1983, seeking injunctive relief against unlawful and unreasonable picketing of L & J's surface mining operation in Greene County. Thomas Samek was a rank and file union organizer assigned to the L & J picket line and Marshall Morris was a striking employee of L & J who was a picket at the worksite. Upon consideration of L & J's complaint, on July 26, 1983 a preliminary injunction was granted against unlawful picketing and the number of pickets was limited. Following hearings held on July 28 and 29, 1983, the court entered an Order enjoining the members and employees of the Union: 1) from causing or threatening the use of force on or about the picket line; 2) from exercising or using physical restraint on vehicles entering or using L & J's premises; and 3) from maintaining more than a specific limited number of pickets at main access roads. A subsequent Order finding appellants in contempt of the July 29, 1983 injunction was entered on October 14, 1983, but no sentence was imposed. The October 14, 1983 Order modified the previous Order by authorizing picketing in an area where it had previously been prohibited, enjoining the use or display of weapons at the worksite, and enjoining physical obstruction of ingress to and egress from the worksite.

Thereafter, on March 6, 1984, L & J filed a petition alleging numerous violations of the court's injunction. The petition requested that the Union be held in contempt of court and that Thomas Samek and Marshall Morris be

barred from the picket line. On May 4, 1984, L & J filed a supplemental petition alleging further violations of the court's Orders regarding conduct that occurred near the worksite on April 26, 1984. The Union also filed a petition on May 4, 1984, requesting that L & J be held in contempt of the court's Orders. A hearing was held concerning the contempt petitions before Judge Glenn Toothman on May 14, 1984. The court found that Marshall Morris had obstructed the path of a delivery man to the worksite and threatened the safety of the driver and his family. Union organizer Thomas Samek was found to have assaulted Frederick Sparks, a L & J employee, causing facial lacerations and trauma of the head. At the close of the hearing the court found the Union, Marshall Morris and Thomas Samek in contempt of court. Morris received a suspended sentence on the condition that his actions on the picket line would not re-occur, Samek was sentenced to not less than one month or more than six months imprisonments, and the Union was fined $2,500.00.

On May 16, 1984, appellants filed an Application for a Stay, an Application for Bail and a Motion for a New Trial. All motions were denied. On May 16, 1984, appellants also filed a notice of appeal with this court and applied for a stay of Samek's sentence pending appeal. On May 17, 1984, Judge John Brosky granted a temporary stay of sentence and, on May 21, 1984, the stay was continued pending disposition of this appeal.

 Both parties to this appeal agree that the contempt proceedings herein were in the nature of indirect criminal contempt. Moreover, the trial judge's opinion, filed on May 31, 1984, states:

> At the time of sentencing the contempt finding was viewed in the light of a civil contempt, rather than a criminal contempt and the sentences which were imposed were made with that in mind. However, since making our findings and reviewing the applicable law regarding contempt proceedings, we are now convinced that the contempt finding must be considered criminal in nature,

since the dominant purpose of the Court was at that time to vindicate the authority of the Court and also to protect the interest of the general public, i.e. to insure the safety of persons and property...

In conclusion, this Court was necessarily interested in maintaining peacefulness and orderliness on the picket line. The picketing has continued now for nearly a year and there have been several incidents in which the Sheriff and State Police were called in. We have only the desire and intention of maintaining lawfulness and order in the process.

The dominant purpose and objective of the court's order is the controlling factor in determining whether a contempt is civil or criminal. *In re Martorano*, 464 Pa. 66, 78, 346 A.2d 22, 28 (1975); *Brocker v. Brocker*, 429 Pa. 513, 519, 241 A.2d 336, 338 (1968); *Knaus v. Knaus*, 387 Pa. 370, 376–77, 127 A.2d 669, 672 (1956). If the court's purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, and the sanction imposed is designed to punish the contemnor, then the citation is one for criminal contempt. *Commonwealth v. Charlett*, 481 Pa. 22, 27–28, 391 A.2d 1296, 1298–99 (1978); *In re Martorano*, *supra.* In light of these principles and the observations of the trial judge, the contempt citation herein must be considered criminal in nature.

 Because indirect criminal contempt is a crime in every fundamental respect, an accused in such a proceeding must be accorded essential procedural safeguards. *Commonwealth v. Charlett*, 481 Pa. at 26, 391 A.2d at 1298; *Marco Industries, Inc. v. United Steelworkers of America*, 401 Pa. 299, 164 A.2d 205 (1960); *Cipolla v. Cipolla*, 264 Pa.Super. 53, 398 A.2d 1053 (1979). The procedural protections applicable in an indirect criminal contempt proceeding for violation of an injunction are set forth in 42 Pa.Cons. Stat. § 4136, which provides:

§ 4136. Rights of persons charged with certain indirect criminal contempts

(a) General rule.—A person charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court shall enjoy:

(1) The rights to bail that are accorded to persons accused of crime.

(2) The right to be notified of the accusation and a reasonable time to make a defense, if the alleged contempt is not committed in the immediate view or presence of the court.

(3)(i) Upon demand, the right to a speedy and public trial by an impartial jury of the judicial district wherein the contempt is alleged to have been committed.

(ii) The requirement of subparagraph (i) shall not be construed to apply to contempts:

(A) committed in the presence of the court or so near thereto as to interfere directly with the administration of justice, or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of the court; or

(B) subject to 75 Pa.C.S. § 4108(c) (relating to nonjury criminal contempt proceedings).

(4) The right to file with the court a demand for the withdrawal of the judge sitting in the proceeding, if the alleged contempt arises from an attack upon the character or conduct of such judge, and if the attack occurred otherwise than in open court. Upon the filing of any such demand, the judge shall thereupon proceed no further but another judge shall be designated by the court. The demand shall be filed prior to the hearing in the contempt proceeding.

(b) Punishment.—Except as otherwise provided in this title or by statute hereafter enacted, punishment for a contempt specified in subsection (a) may be by fine not exceeding $100 or by imprisonment not exceeding 15 days in jail of the county where the court is sitting, or both, in the discretion of the court. Where a person is committed to jail for the nonpayment of such a fine, he shall be discharged at the expiration of 15 days, but where he is

also committed for a definite time, the 15 days shall be computed from the expiration of the definite time.

42 Pa.Cons.Stat. § 4136 (Supp.1984–85) (renumbered from § 4135). Since the proceedings in the trial court were in the nature of indirect criminal contempt, appellants were necessarily entitled to the rights specified in Section 4136, including the right to admission to bail, the right to be notified of the accusations against them, and upon demand, the right to a trial by jury. Moreover, as the trial judge recognized in his opinion,[1] the punishment for indirect criminal contempt of the court's injunction should not have exceeded the maximums set forth in § 4136(b).

■■■■ Appellee concedes that the sentences imposed by the trial court were illegal. Appellee argues, however, that the procedural safeguards outlined in Section 4136(a) were substantially satisfied in this case. Thus, appellee maintains that the contempt citation should be affirmed and the sentences amended to comply with Section 4136(b). We do not agree.

Although appellants did not demand a jury trial in this case, it is clear that they were not advised at any time prior to the contempt adjudication that the proceedings were in the nature of indirect criminal contempt. *Compare Marco Industries, Inc. v. United Steelworkers of America, supra* (trial court held, prior to trial, that the contempt alleged in the petitions filed by both parties was an indirect criminal contempt; accordingly, the court directed that respondents were to be afforded a jury trial). The petitions charging the Union with contempt requested only that certain employees and members of the Union be barred from partici-

1. After observing that the contempt proceedings were in the nature of indirect criminal contempt, the trial judge further stated:

Consequently it now appears that our sentence is erroneous and under the provisions of 42 Pa.C.S.A., Rule 4135, the punishment must be limited to a maximum of 15 days. This determination is more firmly persuaded by the case of *Commonwealth v. Martorano,* 346 Atl. 2d p. 22. Thus, as to the sentence of Thomas Samek it is excessive and must be modified and as to the named defendants, the fine cannot exceed $100.00 as to each.

(Opinion of Toothman, J., May 31, 1984).

pating in picketing at the L & J worksite. The trial judge never characterized the proceedings nor did the parties; in fact, the trial judge operated under the assumption that the contempt was civil in nature. The alleged contemnors were unaware that they might be sentenced to determinate terms of imprisonment or fixed fines which they could not escape by purging themselves of the contempt. *See In re Martorano*, 464 Pa. at 78–80, 346 A.2d at 28–29. Under these circumstances, appellants were entitled to an explanation of the nature of the proceedings and the opportunity to demand a trial by jury, in accordance with 42 Pa.Cons.Stat. § 4136(a). *Commonwealth v. Charlett*, 481 Pa. at 28–29, 391 A.2d at 1298–1300.

Accordingly, we reverse the court's Order and vacate the sentences imposed incident thereto. The case is remanded for further proceedings consistent with 42 Pa.Cons.Stat. § 4136.

Jurisdiction is relinquished.